[Cite as *In re Mosley Children*, 2015-Ohio-5109.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

MOSLEY CHILDREN

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Sheila G. Farmer, J.
Hon. Patricia A. Delaney, J.

Case Nos. 2015 AP 07 0037,
2015 AP 0038, 2015 AP 0039,
2015 AP 0040, 2015 AP 0041

O P I N I O N

CHARACTER OF PROCEEDING:
Appeal from the Tuscarawas County Court
of Common Pleas, Juvenile Division, Case
Nos. 14 JN 00073, 14 JN 00074, and
15 JN 00035

JUDGMENT:
Affirmed

DATE OF JUDGMENT ENTRY:
December 8, 2015

APPEARANCES:

For Appellee
Tuscarawas County Job/Family Services

JEFFREY M. KIGGANS
389 16th Street, SW
New Philadelphia, Ohio 44663

For Mother – Holly Feister

JACOB WILL
116 Cleveland Ave. N. Suite 808
Canton, Ohio 44702

For Mother – Michelle Broad

JOHN GARTRELL
153 N. Broadway
New Philadelphia, Ohio 44663

For Appellant – Kody Mosley

ADAM WILGUS
401 Tuscarawas St. W. - Suite 200
Canton, Ohio 44702

Guardian ad Litem

GERRIT DENHEIJER
222 West Main St.
Ravenna, Ohio 44266

For - Z.B.

SHARON BUCKLEY-MIRHAIDARI
152 N. Broadway, Suite 200
New Philadelphia, Ohio 44663

*Hoffman, P.J.*

{¶1}   In Tuscarawas App. No. 2015 AP 07 0037, Appellant Kody Mosley ("Father") appeals the June 22, 2015 judgment entry entered by the Tuscarawas County Court of Common Pleas, which terminated his parental rights, privileges and responsibilities with respect to two of his minor children, Z.B. and Ka.M., and granted permanent custody of the children to Appellee Tuscarawas County Job and Family Services ("TCJFS").  In Tuscarawas App. No. 2015 AP 07 0038, Appellant Holly Feister ("Mother") appeals the same June 22, 2015 judgment entry, which terminated her parental rights, privileges and responsibilities with respect to one of her minor children, Ka.M., and granted permanent custody of the child to TCJFS.  In Tuscarawas App. No. 2015 AP 07 0039, Mother appeals the same entry with respect to her minor child, Ke.F. In Tuscarawas App. No. 2015 AP 07 0040, Father appeals another June 22, 2015 judgment entry also entered by the Tuscarawas County Court of Common Pleas, which terminated his parental rights, privileges and responsibilities with respect to his infant child, Ko.M.,  and granted permanent custody of the child to TCJFS.  In Tuscarawas App. No. 2015 AP 07 0041, Mother appeals the same June 22, 2015 judgment entry, which terminated her parental rights, privileges and responsibilities with respect to her infant child, Ko.M.,  and granted permanent custody of the child to TCJFS.

STATEMENT OF THE FACTS AND CASE

{¶2}   Father is the biological father of Z.B. (dob 3/24/2009), Ka.M. (dob 8/5/2013), Ko.M. (dob 2/13/2015). The biological mother of Z.B. is Michelle Broad, nka Michelle

Kennedy.[1]    Mother is the biological mother of K.F., Ka.M., and Ko.M.  The biological father of K.F. is Anthony Hockenberry.[2]

{¶3}    On March 4, 2014, while Z.B. was with Michelle Broad, TCJFS social worker Kari Abel visited the home and found Z.B. heavily bruised.  Nearly every area of the child's body was bruised, including behind his ear.  The child was seen at Akron Children's Hospital that same day.  The initial report from the hospital indicated Z.B.'s injuries were consistent with abuse.  At the time, Z.B., Ka.M., and K.F. resided with Father and Mother.  The trial court conducted a shelter care hearing on March 5, 2015, and ordered Z.B., Ka.M., and K.F. into the temporary custody of TCJFS.  The trial court appointed Attorney Gerrit denHeijer as guardian ad litem for the children, and Attorney Sharon Buckley as counsel for Z.B.

{¶4}    TCJFS filed a complaint on March 6, 2014, alleging Z.B. was an abused child, and Ka.M. was a neglected and dependent child.  TCJFS filed a second complaint the same day, alleging K.F. was a neglected and dependent child.  After the parties stipulated, the trial court adjudicated Z.B. abused, and Ka.M. and K.F. dependent on April 9, 2014.  The trial court continued temporary custody with TCJFS.

{¶5}    On January 30, 2015, TCJFS filed a motion for permanent custody of Z.B., Ka.M., and K.F.  The trial court scheduled a hearing for April 23, 2015.

{¶6}    Mother gave birth to Ko.M. on February 12, 2015.  The newborn was immediately placed in the temporary custody of TCJFS.  The trial court appointed Attorney Gerrit denHeijer as guardian ad litem for Ko.M.  On February 17, 2015, TCJFS

---

[1] Broad is not a party to these appeals.
[2] Hockenberry is not a party to these appeals.

filed a complaint, alleging Ko.M. was a dependent child. At an adjudicatory hearing on April 10, 2015, Mother and Father stipulated Ko.M. was dependent, and the trial court so found. TCJFS requested the initial disposition for Ko.M. be permanent custody. Mother and Father both requested six month extensions of temporary custody relative to all the children.

{¶7}   The guardian ad litem filed his reports on April 30, 2015. The guardian recommended permanent custody of the children be granted to TCJFS.

{¶8}   The final hearing commenced on April 23, 2015, and concluded on June 3, 2015. The following evidence was adduced at the hearing.

{¶9}   Jaime Grunder, the ongoing case manager, testified regarding how TCJFS began its involvement with the family. Grunder detailed Parents' case plans. Both Parents' case plans required they undergo psychological assessments and follow all recommendations, and complete parenting classes. Father was also required to complete an anger management assessment. Father's case plan was subsequently amended to include the Voyager Program, a long term cognitive behavioral treatment program which runs approximately 52 weeks.

{¶10} Grunder testified neither Mother nor Father have remedied the concerns which led to the agency's involvement. Parents had failed to take any responsibility for what had happened to Z.B., choosing to blame Broad for the boy's injuries. Z.B. told Grunder he wished to remain in his foster home because he feels safe, is being taken care of, and no one is hurting him. Grunder witnessed Z.B.'s fear of Parents. Z.B. and KoM. are in the same foster home, and the family wishes to adopt both children. K.F.

and Ka.M. are together in a different foster home, and that family wishes to adopt those children.

{¶11} Brandi Ankrom, a counselor with Personal and Family Counseling Services, has been counseling Z.B. since June, 2014. Ankrom stated when she discusses Mother and Father, Z.B. immediately becomes agitated, throwing toys, running around, and speaking faster and in a high-pitched tone. Ankrom explained the changes in Z.B.'s behavior indicate he has a lot of anxiety and stress about Parents. Z.B. revealed Father and Mother hit him with closed fists and locked him in the basement. In addition, Z.B. disclosed emotional abuse, including name calling. Z.B. fears Parents and does not want to return to their home.

{¶12} Barbara Schwartz, a clinical therapist at Chrysalis Counseling Center, testified she conducted psychological assessments of Mother and Father. With respect to Mother, Schwartz stated the results of her psychological testing were invalid. Mother responded in a way Schwartz described as "wish fulfillment", the way in which Mother wished her life was, not reality. Mother did not express any concerns about Father's two domestic violence convictions, indicating the incidents did not have anything to do with Parents' relationship. Mother told Schwartz Father was an ideal dad and she had no concerns for the children's safety. Mother denied Father had any role in the abuse of Z.B. Mother noted Father was blamed for everything that happened, which she stated was unfair. Schwartz described Mother as being somewhat anxious, and having feelings of inadequacy, but also having some narcissistic personality traits. Mother had a tendency to over-react emotionally. Mother was extremely guarded.

{¶13} With respect to Father, Schwartz testified Father accepted little to no responsibility for his previous acts of domestic violence. Father told Schwartz Broad hurt Z.B. and blamed him and Mother.  Father's relationship with Broad was an antagonistic one, which Schwartz stated would not be beneficial to Z.B.  Schwartz determined the results of Father's psychological testing were invalid as his responses were strongly influenced by his desire to present his current situation and his parenting skills in an unrealistic positive light.  Father exhibited narcissistic personality traits and schizoid personality features.  Schwartz's primary concern was Father's anger and impulse control issues, which remained even after Father had completed a treatment program at Melymbrosia in 2013.

{¶14} Dr. Steven Dean also conducted psychological assessments of Mother and Father.  With respect to Mother, Dr. Dean stated the results of Mother's psychological testing were invalid as Mother portrayed herself in an overly positive light.  Mother had no appreciation of the severity of Father's past behavior.  Dr. Dean expressed concerns Mother would try to protect Father or cover for him, including taking the blame.  Dr. Dean recalled a physical altercation between Father and Broad in Mother's presence.  When the police arrived, Mother informed them she had hit Broad, not Father.

{¶15} With respect to Father, Dr. Dean testified he had evaluated Father and had seen him for individual counseling several years earlier after Father was convicted of domestic violence.  During the current evaluation, Father minimized the seriousness of his actions which resulted in the prior domestic violence convictions, and accepted no responsibility for what had occurred. Although Father denied physically abusing Mother, Dr. Dean sensed the relationship between Parents was verbally abusive. Dr. Dean did

not find Father to be honest in his answers. Father attempted to present himself in an overly favorable light. Dr. Dean expressed concerns about Father re-engaging in domestic violence. Dr. Dean recommended long term domestic violence treatment, including participation in the Voyager Program.

{¶16} Sondra Fronimo, the executive director of the Voyager Program, testified Father started the batterers' intervention program in the fall of 2014, but was removed from the program in February, 2015, because he was not actively participating. Members of the group voted to allow Father to return to the program. Fronimo began seeing improvement in Father shortly before the commencement of the permanent custody hearing. Fronimo noted Father continued to deny abusing Z.B.

{¶17} Via Judgment Entries filed June 22, 2015, the trial court terminated Mother and Father's parental rights, privileges, and responsibilities with respect to Z.B., K.F., Ka.M., and Ko.M., and granted permanent custody of the children to TCJFS.

{¶18} It is from these entries Parents appeal.

{¶19} In Tusc. App. Nos. 2015 AP 07 0037 and 0040, Father raises the following assignment of error:

{¶20} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶21} In Tusc. App. Nos. 2015 AP 07 0038, 0039, and 0041, Mother assigns the following as error:

{¶22} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶23} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OR PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶24} This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

FATHER

2015 AP 07 0037

2015 AP 07 0040

I

MOTHER

2015 AP 07 0038

2015 AP 07 0039

2015 AP 07 0041

I, II

{¶25} We elect to address all of Parents' assignments of error together.  In his sole assignments of error in Tusc. App. No. 2015 AP 07 0037 and 0040, Father contends the trial court's finding the children could not or should not be placed with him within a

reasonable time was against the manifest weight and sufficiency of the evidence. In her first assignments of error in Tusc. App. Nos. 2015 AP 07 0038, 0039, and 0041, Mother also argues the trial court's finding the children could not or should not be placed with her within a reasonable time was against the manifest weight and sufficiency of the evidence. In her second assignments of error, Mother maintains the trial court's finding it was in the children's best interest to grant permanent custody TCJFS was against the manifest weight and sufficiency of the evidence.

{¶26} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶27} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶28} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not

abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶29}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶30}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶31}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not

be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶32} As set forth in our statement of the facts and case, supra, we find there was both sufficient and substantial competent evidence Father and Mother failed to remedy the problems which initially caused the removal of the children from their home.  Parents continued to deny abusing Z.B. and refused to take any responsibility for what had happened to the child.  The results of Parents' psychological testing were invalid due to their lack of honesty.   The fact Parents completed the requirements of their case plans does not necessarily equate to Parents' complying with or benefiting from those services.

{¶33} With respect to the best interest finding, the evidence revealed all four children are doing well in their foster homes and the foster families wish to adopt them. Z.B. continues to react negatively whenever mention of Father or Mother is made.

{¶34} Father further argues the trial court should have granted a six month extension in which to complete his case plan.  Father claims he completed each of his case plans requirements except for the Voyager Program.

{¶35} A trial court's decision to grant or deny an extension of temporary custody is a discretionary one. See, R.C. § 2151.415(D)(1) and (2).

{¶36} Pursuant to R.C. § 2151.415(D)(1), a trial court can extend temporary custody for six months only if it finds, by clear and convincing evidence, (1) that such an extension is in the best interests of the child, (2) that there has been significant progress

on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of extension. See, *In re McNab,* 5th Dist. Nos.2007 AP 11 0074, 2007 AP 11 0075, 2008–Ohio–1638.

**{¶37}** We find Father has failed to demonstrate an abuse of discretion by the trial court in denying the motion for a six-month extension. Although Father underwent psychological assessments, both Barbara Schwartz and Dr. Steven Dean testified the results of the testing were invalid due to Father's lack of honesty.  Sondra Fronimo, the executive director of the Voyager Program, testified Father was six months behind in completing the program due to his failure to actively participate.  It was only in the weeks before the permanent custody hearing Fronimo began to see improvements in Father. Thus, the failure to complete the program in a timely manner was due solely to Father's inaction.  Fronimo also testified, despite the improvements, Father continued to deny abusing Z.B.  We find the evidence, as set forth more fully above, supports the conclusion an extension of temporary custody was not in the children's best interests, but, rather, their interests were best served by the award of legal custody to TCJFS.

**{¶38}** Father's sole assignment of error is overruled.  Mother's first and second assignments of error are overruled.

{¶39}  The judgments of the Tuscarawas County Court of Common Pleas, Juvenile

Division, are affirmed.

By: Hoffman, P.J.

Farmer, J.  and

Delaney, J. concur